# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 3:21cr40/MCR

JOHN M. THOMAS

_____/

## FACTUAL BASIS FOR GUILTY PLEA

This statement of facts is submitted on behalf of the undersigned parties. All parties agree that if the above-captioned case were to go to trial, the government could produce competent, substantial evidence of the following facts to prove the defendant is guilty of the offenses charged in the Indictment to which the defendant is pleading guilty. The parties further agree that not all of the facts known from or related to this investigation are contained in this brief summary.

## STATEMENT OF FACTS

1. The defendant, John M. Thomas, operated an insurance business known as Thomas Insurance LLC in Pensacola, Florida, and was licensed to provide insurance services and sell annuities. Through this business, the defendant defrauded clients through a common type of insurance fraud known as premium diversion. The defendant executed this scheme by collecting insurance premiums

**FILED IN OPEN COURT THIS**
August 25 2021 /s/
CLERK, U.S. DISTRICT
COURT, NORTH DIST. FLA

from clients and keeping the funds for personal use instead of producing insurance policies. The defendant gave the clients fraudulent documents that he produced referencing insurance policies that did not exist.

2. Between on or about April 22, 2013, and on or about February 16, 2021, the defendant falsely and fraudulently represented that he had obtained insurance policies with various insurance companies for certain clients (hereinafter "victim clients"). However, the defendant did not secure or attempt to secure insurance policies for these clients, but instead provided the victim clients with fraudulent insurance documents, including Certificates of Insurance, Insurance Declaration Page, Evidence of Commercial Property Insurance, and other false insurance policy documents indicating the policies had been obtained and coverage was in effect.

3. The defendant induced the victim clients to send premium payments to him by emailing fraudulent insurance documents representing the type of coverage and premium due knowing he did not intend to purchase these insurance policies. Instead of purchasing the insurance for the victim clients, the defendant converted victim client payments that were meant for policy premiums to his own personal use by depositing the money into his personal bank accounts. Between on or about May 7, 2014, and on or about February 16, 2021, the defendant electronically deposited into his bank accounts approximately $4,863,088.97 in payments from at least 67

2

victim clients including, Victim Client #1 through Victim Client #15, which were intended by these clients to be used to pay for premiums for insurance policies, but were not applied to pay such premiums by the defendant.

4.  For the purpose of executing his insurance fraud scheme, the defendant emailed or faxed, both forms of wire communication, to victim clients or in behalf of victim clients, fraudulent insurance documents representing that he had secured insurance policies and emailed victim clients seeking premium payments for insurance policies he did not intend to secure, including the following:

a.  On or about October 13, 2020, the defendant emailed an invoice to Victim Client #1 seeking a premium payment of $52,923.00 purportedly to secure a $4.1 million commercial property insurance policy with Seneca Specialty Insurance Company, then knowing he did not intend to use the funds to secure the commercial property insurance as represented. To induce Victim Client #1 to pay the premium, on or about October 13, 2020, the defendant also emailed a fraudulent Evidence of Commercial Property Insurance form dated September 10, 2020, for the property insurance policy with Seneca Specialty Insurance Company effective September 10, 2020, knowing no such policy was in effect.

b.  On or about January 24, 2020, the defendant emailed an invoice to Victim Client #2 seeking a premium payment of $18,397.94 purportedly to secure

commercial property insurance policies with various insurance companies for wind, ex-wind, and flood insurance, then knowing he did not intend to use the funds to secure the insurance as represented.

c. On or about December 17, 2019, the defendant emailed two fraudulent Evidence of Commercial Property Insurance forms dated July 25, 2019, for $200,000 and $563,600 commercial property insurance policies with Canopius US Insurance company effective August 13, 2019, as evidence of insurance to Victim Client #3's lender.

d. On or about August 7, 2017, the defendant emailed a fraudulent Evidence of Commercial Property Insurance form dated October 4, 2016, for a $4,025,000 commercial property insurance policy with Lloyds of London effective October 4, 2016, as evidence of insurance to Victim Client #4.

e. On or about June 1, 2020, the defendant emailed a fraudulent Commercial Property Policy Declarations Page dated August 3, 2019, for a $9,053,665 commercial property insurance policy with Underwriters at Lloyds effective August 3, 2019, as evidence of insurance to Victim Client #5.

f. On or about March 13, 2019, the defendant emailed a fraudulent insurance Policy Declarations Page dated March 13, 2019, for a $800,000 property

insurance policy with Lexington Insurance Company effective March 13, 2019, as evidence of insurance to Victim Client #6.

 g. On or about April 30, 2018, the defendant emailed Victim Client #7 seeking a premium payment of $4,205.61 purportedly to secure a property insurance policy with Chubb, then knowing he did not intend to use the funds to secure the commercial property insurance as represented.

 h. On or about April 9, 2020, the defendant faxed a fraudulent Insurance Policy Declarations Page dated November 30, 2019, for a $500,000 property insurance policy with Lexington Insurance Company effective November 30, 2019, as evidence of insurance to Victim Client #8's lender.

 i. On or about June 3, 2020, the defendant emailed a fraudulent Insurance Policy Declarations Page dated May 21, 2020, for a $500,000 insurance policy with Aspen Specialty Insurance Company as evidence of insurance to Victim Client #9.

 j. On or about November 4, 2020, the defendant emailed a fraudulent Insurance Policy Declarations Page dated April 9, 2020, for a $635,000 insurance policy with St. Johns Insurance company effective April 9, 2020, as evidence of insurance to Victim Client #10.

 k. On or about March 2, 2020, the defendant emailed a fraudulent Certificate of Liability Insurance dated July 1, 2019, for a $2 million commercial

general liability insurance policy with Aspen Limited Insurance Company effective July 1, 2019, to Company A, a customer of Victim Client #11, as evidence of insurance.

l.  On or about September 4, 2018, the defendant emailed a fraudulent Insurance Policy Declarations Page dated August 1, 2018, for a one-year, $595,000 homeowner's property insurance policy with Lexington Insurance Company effective August 1, 2018, as evidence of insurance to Victim Client #12.

m.  On or about March 12, 2019, the defendant emailed a fraudulent Insurance Policy Declarations Page for a $500,000 insurance policy with Great American Insurance Company effective November 27, 2018, as evidence of insurance to Victim Client #13.

n.  On or about February 7, 2020, the defendant emailed a fraudulent Evidence of Commercial Property Insurance form for a $1,260,000 commercial insurance policy with Certain Underwriters at Lloyds effective January 30, 2020, as evidence of insurance to Victim Client #14.

o.  On or about May 29, 2020, the defendant emailed two fictious letters that he created purportedly to be from Aspen Insurance dated May 12, 2020, denying claims for property loss due to coronavirus to Victim Client #15, knowing the letters were fictious and the policy did not exist.

5.     By not purchasing insurance with the premiums paid by his victim clients, the defendant caused approximately $2,262,056.74 in unpaid claim losses caused by hurricane, fire, and liability claims.

6.     On or about January 12, 2016, the defendant falsely and fraudulently represented that he had obtained an annuity for J.T. when in fact, he had not. The defendant did not secure or attempt to secure the annuity for J.T., but provided J.T. with a fraudulent contract to show the annuity had been obtained. On or about January 13, 2016, the defendant deposited into his Compass bank account approximately $90,000.00 from J.T., which was intended by J.T. to be used to purchase an annuity, but was not applied to pay for such annuity. Instead, the defendant converted the payment to his own personal use. For the purpose of executing his fraud scheme, on or about March 5, 2020, the defendant emailed a fraudulent portfolio summary showing a balance of $90,000 with Fidelity Investments to J.T.

7.     Between on or about May 7, 2014, and on or about February 16, 2021, the defendant deposited proceeds of the wire fraud into the following bank accounts he controlled.

| THOMAS INSURANCE LLC LOSS BY BANK ACCOUNT ||||||
|---|---|---|---|---|---|
| Bank | Account | Beginning Date | End Date | Total Deposits ||
| Synovus | 1492 | 10/2/2020 | 10/2/2020 | $ | 4,817.00 |
| Gulf Coast Community Bank | 1782 | 5/7/2014 | 8/10/2016 | $ | 201,582.34 |
| Wells Fargo (CC) | 4448 | 2/16/2021 | 2/16/2021 | $ | 341.13 |
| Synovus | 4513 | 4/14/2017 | 12/16/2020 | $ | 169,366.78 |
| ServisFirst | 6367 | 6/13/2016 | 1/22/2021 | $ | 4,030,660.07 |
| Compass | 6790 | 5/21/2014 | 6/3/2016 | $ | 456,321.64 |
| | | | **Total** | $ | **4,863,088.97** |

8. The defendant engaged in numerous monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, including the following transactions:

| Date | Amount | Transaction |
|---|---|---|
| August 29, 2016 | $25,000 check from his ServisFirst bank account ending in 6367 | A payment for the restoration of the defendant's 1979 Jeep CJ7. |
| April 4, 2018 | $16,896.00 check from his ServisFirst bank account ending in 6367 | A payment for an African safari. |

| April 6, 2020 | $40,000.00 wire transfer from his ServisFirst bank account ending in 6367 | The purchase of real estate in Park City, Utah. |
| July 17, 2020 | $44,350.00 check from his ServisFirst bank account ending in 6367 | A payment for a metal roof at the defendant's residence in Gulf Breeze, Florida. |

9. The defendant also conducted numerous financial transactions affecting interstate or foreign commerce, knowing that the transactions were designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds from the wire fraud, including the following transactions:

| **Date** | **Amount** | **Transaction** |
|---|---|---|
| January 4, 2017 | $50,000 | A transfer from the defendant's ServisFirst bank account ending in 6367 to his JSSK Family Trust ServisFirst bank account ending in 6433, then transferred again, using a check for $41,500.00, to purchase a 2017 Lexus model GX460. |
| February 26, 2019 | $278,730.14 | A transfer from the defendant's ServisFirst bank account ending in 6367, to his JSSK Family Trust ServisFirst bank account ending in 6433, then a wire transfer to purchase a condominium on Pensacola Beach, Florida. |

| December 2, 2019 | $30,469.80 | A check from the defendant's ServisFirst bank account ending in 6367 to exchange for 20 one-ounce gold coins. |
| December 6, 2019 | $97,557.19 | A transfer from the defedant's ServisFirst bank account ending in 6367 to his E*Trade brokerage account ending in 4362. |

## ELEMENTS

*Counts One through Sixteen* – Wire fraud, in violation of Title 18, United States Code, Section 1343. ECCA Pattern Jury Instruction O51.

> (1) the Defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;
>
> (2) the false pretenses, representations, or promises were about a material fact;
>
> (3) the Defendant acted with the intent to defraud; and
>
> (4) the Defendant transmitted or caused to be transmitted by [wire] [radio] [television] some communication in interstate commerce to help carry out the scheme to defraud.

*Counts Seventeen through Twenty* – Money laundering, in violation of Title 18, United States Code, Section 1957. ECCA Pattern Jury Instruction O74.6.

> (1) the Defendant knowingly engaged or attempted to engage in a monetary transaction;
>
> (2) the Defendant knew the transaction involved property or funds that were the proceeds of some criminal activity;
>
> (3) the property had a value of more than $10,000;
>
> (4) the property was in fact proceeds of wire fraud; and

(5) the transaction took place in the United States.

*Counts Twenty-one through Twenty-four* – Money laundering to conceal proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i). ECCA Pattern Jury Instruction O74.2.

  (1) the Defendant knowingly conducted or tried to conduct financial transactions;

  (2) the Defendant knew that the money or property involved in the transaction were the proceeds of some kind of unlawful activity;

  (3) money or property did come from an unlawful activity, specifically wire fraud; and

  (4) the Defendant knew that the transaction was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or the control of the proceeds.

|  |  |
|---|---|
| /s/ MARK O'BRIEN<br>Attorney for Defendant | JASON R. COODY<br>Acting United States Attorney<br><br>/s/ JEFFREY M. THARP<br>Assistant U.S. Attorney<br>Northern District of Florida<br>Florida Bar No.: 45066<br>21 East Garden Street, Suite 400<br>Pensacola, Florida 32502<br>(850) 444-4000<br>jeffrey.tharp@usdoj.gov |
| August 25, 2021<br>Date | 8/25/2021<br>Date |
| /s/ JOHN M. THOMAS<br>Defendant | |

11